UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LISA BOWMAN, KEITH BOWMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) Civil Action Number <br> ) 2:19-cv-00831-AKK <br> PHH MORTGAGE ) <br> CORPORATION, *et. al.*, ) <br> ) <br> Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' motion to remand. Doc. 13. For the reasons explained below, the court grants the motion to remand.

### I. FACTS AND PROCEDURAL HISTORY

On May 14, 2019, Lisa and Keith Bowman filed a complaint in Alabama state court against the following defendants: PHH Mortgage Corporation ("PHH"), Ocwen Loan Servicing, LLC ("Ocwen"), Altisource Solutions, Inc. ("Altisource"), Mimsco, Inc. ("Mimsco"), and Scott Mims ("Mims"). Doc. 1-1 at 10. The Bowmans are both residents of Louisiana. *Id.* None of the defendants is a citizen of Louisiana, but both Mimsco and Mims are citizens of Alabama. Doc. 10; *see also* doc. 1-1 at 11. The same day the Bowmans filed their complaint, they sent formal process by certified mail to each of the defendants. Doc. 1-1 at 8.

1

PHH and Ocwen ("the removing defendants") timely filed a notice of removal.[1] Doc. 1. They claimed that this court has jurisdiction over the case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000. *Id.* at 2. The Bowmans timely moved to remand. Doc. 13.

## II.  ANALYSIS

A defendant may remove a case from state court to federal district court if the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Original jurisdiction includes diversity of citizenship. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). Diversity jurisdiction exists if no plaintiff is a citizen of the same state as any defendant—i.e., complete diversity—and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). In this case, there is no question that the parties are completely diverse, and that the amount-in-controversy requirement is satisfied. Thus, the court has original jurisdiction.[2]

---

[1] The other defendants did not join in the notice of removal. *See* doc. 1. Altisource has subsequently made an appearance by filing an answer. Doc. 17.

[2] Complete diversity and the amount in controversy are jurisdictional requirements, but the forum defendant rule and the rule of unanimity are procedural requirements. *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1258 (11th Cir. 1999) (noting, in light of 28 U.S.C. § 1447(c), that violating the forum defendant rule is a procedural defect); *see In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1410 n.2 (11th Cir. 1997) ("The failure to join all defendants in the petition is a defect in the removal procedure.").

But original jurisdiction is not always enough.  There are additional hurdles to removal, two of which are relevant here.  First, when removing solely on the basis of diversity jurisdiction, a defendant may not remove "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Second, "all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  These two hurdles are respectively known as the forum defendant rule and the rule of unanimity.

The Bowmans argue that the removing defendants violated these rules.  In brief, two of the defendants named and joined in the complaint, Mimsco and Mims, are citizens of Alabama and the forum defendant rule would ordinarily preclude removal based on diversity when there are in-state defendants.  Doc. 13 at 3–4.  Likewise, PHH and Ocwen, the removing defendants, did not obtain consent to remove from Mimsco, Mims, and Altisource, which seems to contradict the rule of unanimity.  *Id.* at 5.  The removing defendants respond that these two rules do not apply because none of the defendants was properly served.  Doc. 1 at 3–5.

But even agreeing with the removing defendants that the plaintiffs failed to properly serve any of the defendants, and that consequently the rule of unanimity does not apply, the removal is still improper.  The issue before the court relates to an increasingly common litigation tactic known as "snap removal," through which

defendants bypass the forum defendant rule found in § 1441(b)(2) by removing a case before service. *Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1377 (N.D. Ga. 2018). The precise question is whether it violates the forum defendant rule for out-of-state defendants to remove a case for diversity jurisdiction, even though there are two in-state defendants, if none of the defendants has been properly served.

Before beginning its analysis, the court notes that it must construe removal statutes narrowly. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). There is a "presumption against the exercise of federal jurisdiction," and uncertainties as to removal are resolved in favor of remand. *Id.* Defendants bear the burden of showing removal is appropriate. *Id.*

Though there is no binding precedent from the Supreme Court or the Eleventh Circuit, this court is far from the first to grapple with this issue. *See, e.g.*, *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 317 (D. Mass. 2013) (collecting cases). Most courts have agreed that the meaning of the text in § 1441(b)(2) is clear and unambiguous. *See id.* However, these courts have divided over whether to follow the plain meaning of the text, with many courts declining to do so, because, in their view, it produces truly absurd results that Congress could not possibly have intended. *See id.*

This court adopts a different approach. An alternative interpretation of the text suggests that the statute is more ambiguous than other courts have supposed. So rather than decide whether to follow the plain meaning, the court asks which of two permissible constructions of the text best effectuates Congress' intent. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 207 (1978) ("The Court recognizes that the first purpose of statutory construction is to ascertain the intent of the legislature."). When considered in light of the whole statute, including its history and purpose, the second reading—i.e., requiring at least one defendant to have been properly joined and served before removal when an in-state defendant is involved—emerges as the better interpretation.

In reaching this determination, the court begins, as it must, with the text. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1441(b)(2) reads as follows:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Zeroing in on the "properly joined and served" language, the removing defendants argue that the text is unambiguous: "Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018). By this reasoning, so long as an in-state defendant has not been served,

5

the forum defendant rule does not apply. Most courts have accepted this interpretation as the plain meaning without further analysis.

More recently, a second interpretation of the text has emerged. *See Gentile*, 934 F. Supp. 2d at 318; *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369 (N.D. Ga. 2011).[3] These courts note that the text tells courts to look to see if "any of the parties in interest properly joined and served as defendants is a citizen of the" forum state. § 1441(b)(2). But what if there are no parties properly joined and served as defendants? The word "any," as used in the text, is a pronoun; as such, it means "one or more indiscriminately from all those of a kind." Webster's Third New International Dictionary 97 (3d ed. 1986). "Inherent in the definition is some number of the kind from which the one or more can be drawn." *Gentile*, 934 F. Supp. 2d at 318. In other words, as these courts have found, the text assumes the kind exists—that at least one party in interest has been properly joined and served. Thus, under this interpretation of the statute, when there is an in-state defendant, at least one

---

[3] *Hawkins* advanced this interpretation based on a previous version of the statute, which was amended in 2011. *See Hawkins*, 785 F. Supp. 2d at 1369; Federal Courts Jurisdiction and Venue Clarification Act of 2011, 125 Stat. 758 (2011). Before 2011, the statute read in relevant part that a diversity case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of" the forum state. 28 U.S.C. § 1441(b) (2006). Essentially, the amendment changed the word "none" to "any." The legislative history indicates that the change was stylistic, not substantive. H.R. Rep. No. 112-10, at 12 (2011) ("Proposed paragraph 1441(b)(2) restates the substance of the last sentence of current subsection 1441(b), which relates only to diversity."). Nevertheless, after the amendment, some district courts have dismissed *Hawkins*' statutory analysis as outdated. *See Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1378 (N.D. Ga. 2018). But the *Gentile* court demonstrates why the change did not affect the analysis, as explained above. *Gentile*, 934 F. Supp. 2d at 318.

6

defendant must have been properly joined and served before removing for diversity.[4] The court finds this interpretation to be plausible, if not persuasive.

In finding this interpretation plausible, the court notes that courts do not interpret statutory text "in a vacuum." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (quotation omitted). Rather, statutory interpretation is a "holistic endeavor which determines meaning by looking not to isolated words, but to text in context, along with purpose and history." *Id.* (quotation omitted); *see also McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 861 (2005) ("Examination of purpose is a staple of statutory interpretation."). To be sure, a statute's purpose cannot be used to contradict the plain meaning of the text. *Bellito v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). For this reason, "[p]urpose sheds light only on deciding which of various textually permissible meanings should be adopted." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 57 (2012). In short, courts "favor an interpretation that furthers the manifest purpose of a statute so long as the interpretation is textually permissible." *United States v. Spoor*

---

[4] In *Goodwin v. Reynolds*, No. 2:12-cv-0033-SLB, 2012 WL 4732215, at *6 (N.D. Ala. Sept. 28, 2012), the court rejected this interpretation of the statute, thinking it was foreclosed by precedent permitting defendants to remove before service. This court accepts that, generally, a defendant may remove before service. *Whitehurst v. Wal-Mart*, 306 F. App'x 446, 448 (11th Cir. 2008). The second interpretation merely establishes a "narrow exception" to this practice for cases involving forum defendants. *Lothrop v. N. Am. Air Charter, Inc.*, No. 13-10235-DPW, 2013 WL 3863917, at *2 (D. Mass. July 11, 2013). Indeed, in a case affirming that defendants can generally remove before service, the First Circuit noted without deciding that the principle may be different when the forum defendant rule is concerned. *Novak v. Bank of N.Y. Mellon Trust Co.,* 783 F.3d 910, 911 n.1 (1st Cir. 2015).

*Trustee*, 838 F.3d 1197, 1204 (11th Cir. 2016); *see also United States v. DuBose*, 598 F.3d 726, 731 (11th Cir. 2010) (Courts "are not required to interpret a statute in such a narrow fashion as to defeat what [they] conceive to be its obvious and dominating general purpose." (quotation omitted)).

Thus, to decide between the two prevailing textually permissible interpretations, the court will consider the history and purpose of the statute. The forum defendant rule complements the rationale behind diversity jurisdiction. The purpose of diversity jurisdiction is to protect out-of-state litigants from potential bias in state courts against nonresidents by providing those litigants with a neutral forum in federal court. *Hertz Corp. v. Friend*, 559 U.S. 77, 85 (2010). But there is no need to protect in-state defendants from prejudice against nonresidents. *See Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). For this reason, beginning with the original removal statute found in the Judiciary Act of 1789, Congress has always limited the right to remove diverse cases to out-of-state defendants. *Hawkins*, 785 F. Supp. 2d at 1377 (concluding, after an exhaustive review of removal statutes and the relevant legislative history, that "from the inception of the removal statute, a forum defendant has *never* been allowed to remove a diversity action."); *see also* Judiciary Act of 1789, 1 Stat. 73, 79.[5]

---

[5] There was a brief exception to this when Congress greatly expanded federal jurisdiction around the Reconstruction era. *See* Jurisdiction and Removal Act of 1875, 18 Stat. 470, sec. 2 ("And when in any suit mentioned in this section there shall be a controversy which is wholly

Another relevant principle animates the forum defendant rule. When the requirements of diversity jurisdiction are met, 28 U.S.C. § 1332(a) allows plaintiffs to file in federal court, and 28 U.S.C. § 1441(a) "gives defendants a corresponding opportunity" to remove. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). But the "scales are not evenly balanced." *Id*. at 89–90. Though an "in-state plaintiff may invoke diversity jurisdiction," the forum defendant rule denies the same luxury to in-state defendants. *Id*. at 90. The different treatment is not explained by the logic of diversity jurisdiction, which does not apply in either scenario. Instead, as "the master of his own claim," the law gives greater weight to the plaintiff's choice of forum. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). In this way, a "[d]efendant's right to remove and [a] plaintiff's right to choose his forum are not on equal footing." *Id.*

In its original form, the rule created potential for abuse by plaintiffs. A crafty plaintiff could name an in-state defendant to the suit, without ever intending to prosecute the case against that defendant, purely to frustrate removal. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939). To combat this tactic, defendants could argue that joinder of the in-state defendant was fraudulent. *Id.* But Congress decided this was not enough and amended the statute in 1948 to add another tool to

---

between citizens of different States, and which be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit to the circuit court of the United States for the proper district.").

defendants' arsenal. Specifically, Congress added the "properly joined and served" language to the rule, so that if a plaintiff named but never served an in-state defendant, the forum defendant rule would not preclude removal. In this way, the purpose of the "properly joined and served" addition was "to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom the plaintiff does not intend to proceed." *Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (quoting *Sullivan v. Novartis Pharm. Corp.*, 575 F. Supp. 2d 640, 645 (D.N.J. 2008)).[6]

With the 1948 addition, then, the forum defendant rule manifests three policies. In general, the rule recognizes that in-state defendants do not need the protection of diversity jurisdiction, and it reflects deference to the plaintiff's choice of forum. The properly joined and served language, specifically, represents an effort to combat gamesmanship by plaintiffs.

But the "properly joined and served" language has created its own opportunities for mischief by defendants. Based on the interpretation of this language advanced by the removing defendants in this case, defendants can bypass

---

[6] Obviously, service does not ensure that plaintiffs actually join defendants because they properly belong in the suit, rather than as stunts to prevent removal. Nor is service so great a burden that one could reasonably expect it to deter a plaintiff from pursuing the stunt. In the end, the doctrine of fraudulent joinder remains the surest protection from abuse. Still, Congress evidently selected "incomplete service . . . as a means of identifying and policing such abuse by proxy." *Gentile*, 934 F. Supp. 2d at 320.

10

the forum defendant rule so long as they remove before service, prompting races to the courthouse among other chicanery. Following this logic, even in-state defendants can remove a case so long as they do so before service.

This interpretation is not consistent with the history and purpose of the forum defendant rule. For over two-hundred years, the rule has been that in-state defendants cannot remove cases pursuant to diversity jurisdiction. It strains credulity to imagine that Congress meant to reverse this long-standing policy through an indirect loophole. *See Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 645–46 (D.N.J. 2008) (holding that it would be "absurd" and "could not have been intended by Congress" to allow in-state defendants to remove based on "the timing of service").

Furthermore, in cases involving in-state defendants, the removing defendants' interpretation would eviscerate the plaintiff's right to choose the forum. As Judge Debevoise put in the *Sullivan* case,

> Reading the "properly joined and served" language literally in this context would damage the plaintiff's rightful position as "master of his or her complaint," creating a procedural anomaly whereby defendants could always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before the plaintiff can effect service of process.

*Id.* at 647 (citations omitted). This is not an unrealistic concern. There are numerous services available that provide automatic docket alerts for new case filings. These

services make monitoring dockets relatively effortless, and would allow cunning defendants to further the practice of snap removal to harmful effect.

Finally, the removing defendants' interpretation would take language designed to curtail gamesmanship by plaintiffs and employ that same language to enable gamesmanship by defendants. *Cf. Goodwin*, 757 F.3d at 1221 ("Because the likely purpose of this language is to prevent gamesmanship by plaintiffs, . . . we cannot believe that it constrains the district court's discretion under Rule 41(a)(2) to undo *Defendants*' gamesmanship in the circumstances at bar."). For example, it incentivizes defendants to evade service. *See Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1374–75 (N.D. Ga. 2018) (finding "clear gamesmanship" where defendant changed its registered agent at the last minute to avoid service). And it potentially discourages cooperation between parties, such as asking the defendant to waive service or emailing courtesy copies of the complaint, because doing so might tip off the defendant.

In contrast, the alternative interpretation of the statute—requiring at least one defendant to have been properly joined and served before removal when an in-state defendant is involved—fits neatly with the history and purpose of the rule. Under this reading, "plaintiffs legitimately seeking to join a forum defendant face the modest burden of serving that defendant before any others." *Gentile*, 934 F. Supp. 2d at 322. If the plaintiff serves an out-of-state defendant before an in-state

defendant, the out-of-state defendant is free to remove the case. And, of course, the doctrine of fraudulent joinder is still available to defendants even when the plaintiff serves the in-state defendant first. Thus, this reading is just as effective at preventing abuse by plaintiffs; it closes an unintended loophole inviting abuse by defendants; it better preserves the historical bar on removal by in-state defendants; and it protects the plaintiff's choice of forum.

In sum, there are two ways to interpret the statutory text. The history and purpose of the forum defendant rule strongly support the second interpretation. Moreover, the court must construe removal statutes narrowly, and the second interpretation represents a more limited approach to removal. As a result, the court finds that the second reading is the best interpretation of the statute.

For much of the debate over snap removal, district courts have had little or no guidance from the circuits, presumably because 28 U.S.C. § 1447(d) prevents the circuits from reviewing most remand orders. The court is aware, however, that two circuits have recently held that § 1441(b)(2) permits removal, even by an in-state defendant, before the plaintiff has served any of the defendants. *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–07 (2d Cir. 2019); *Encompass*, 902 F.3d at 152–54. The court does not find these cases to be persuasive because they did not consider the alternative interpretation of the text the court relies on here. *See*

13

*Gibbons*, 919 F.3d at 705 ("Plaintiffs do not even attempt to argue that the text of Section 1441(b)(2) supports their position.").

The Second and Third Circuits made two other points worth noting. First, they found that snap removal does not contravene the purpose of § 1441(b)(2), because it furthers the goal of combatting abuse by plaintiffs. *Id.* at 706; *Encompass*, 902 F.3d at 153. Second, they said Congress meant to create a bright-line rule delineated by service, suggesting that anomalous consequences are the inevitable result of drawing firm lines. *See Gibbons*, 919 F.3d at 706; *Encompass*, 902 F.3d at 153. It is prudent to recall that these arguments were made in the context of finding that snap removal is not absurd—a high bar—rather than in an unweighted analysis of the rule's purpose. Otherwise, the suggestion that Congress meant to curtail gamesmanship by plaintiffs by inviting gamesmanship by defendants would be questionable. More importantly, looking only to the purpose of the "joined and served" language while ignoring the larger purpose of the forum defendant rule— which is to deny in-state defendants the needless protection of diversity jurisdiction—advances a restrictive and incorrect approach to statutory interpretation. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("Our duty . . . is to construe statutes, not isolated provisions." (quotation omitted)). As to the second point, the alternative interpretation of the statute creates a bright-line rule as well:

when an in-state defendant is involved, a case cannot be removed until at least one defendant has been properly joined and served.

For these reasons, the court adopts the second interpretation of the statute. Thus, accepting the removing defendants' contention that the plaintiffs failed to properly serve any of the defendants, and that consequently they did not need to obtain the consent of the other defendants,[7] this case is due to be remanded.

### III. CONCLUSION AND ORDER

The Bowmans motion to remand is **GRANTED**. Doc. 13. This case is **REMANDED** to the Circuit Court of Shelby County, Alabama, from where it was improperly removed, and the clerk is directed to close this file. The pending motion for a more definite statement, doc. 4, is **MOOT**.

**DONE** the 10th day of October, 2019.

*[signature]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[7] The rule of unanimity states: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Unlike § 1441(b)(2), the text is clear: only defendants who have been "properly joined and served" must consent to removal. *See Shakouri v. Davis*, 923 F.3d 407, 410 (5th Cir. 2019) ("By its terms, § 1446(b)(2)(A) does not impose any requirements on defendants who were not properly served. As discussed, there is no evidence that any defendants were properly served. Accordingly, removal did not violate § 1446(b)(2)(A) even though no defendants joined [the] notice of removal or filed consents to removal."), *petition for cert. filed*, No. 19-5841 (U.S. July 24, 2019). Consequently, PHH and Ocwen did not violate the rule of unanimity by removing the case without the consent of the other unserved defendants.